United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Nikola Prcic, Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-20655-Civ-Scola |
| | ) | |
| Carnival Corporation and others, Defendants. | ) | |

### Order Compelling Arbitration

    Plaintiff Nikola Prcic seeks to recover damages from Defendants Carnival plc, doing business as Cunard Line, Carnival Corporation (together the Carnival Defendants), and Fleet Maritime Services (Bermuda) Ltd. for injuries he says he sustained, including plantar fasciitis to his right foot, while working as a waiter aboard the *Queen Mary II*. (Compl. 1-2.) After removing the case, from state court to this Court (Not., ECF No. 1), the Defendants jointly filed a motion to compel arbitration, relying on an employment agreement Prcic signed, requiring him to resolve various onboard disputes through arbitration (Defs.' Mot., ECF No. 6). Prcic opposes the motion, arguing (1) his claims against the Carnival Defendants should not be arbitrated because neither of those entities was a signatory to the agreement; and, in any event, (2) the Defendants have waived their rights to arbitrate based on their delay in handing over a copy of the arbitration agreement to Prcic. (Pl.'s Resp., ECF No. 7.) The Defendants have replied, and the motion is therefore ripe for determination. (Defs.' Reply, ECF No. 11.) After careful review, the Court **grants** the Defendants' motion and orders the parties to submit their disputes to arbitration. (**ECF No. 6**.)

1. **Background**

    Prcic, a Serbian citizen, worked as a waiter on the *Queen Mary II*. He says he sustained various injuries as a result of his work conditions: plantar fasciitis that eventually also resulted in lower back and left hip pain. (Compl. ¶ 11.) Among the issues Prcic complains about are the shoes the Defendants required him to wear, maintaining they did not provide proper foot support, were unnecessarily heavy, and were just generally unsafe. (*Id.* ¶ 10.) Those same kinds of shoes had previously caused other crewmembers to develop plantar fasciitis injuries as well. (*Id.*) The Defendants also assigned Prcic to an unnecessarily distant workstation, knowing that he was recovering from other foot injuries. (*Id.*) The Defendants have refused to provide Prcic with the medical care he needs to treat his injuries. (*Id.* ¶ 13.) Prcic claims the Defendants were negligent, failing to provide him with a safe place to work, supporting his claims

for Jones Act negligence (count one), unseaworthiness (count two), maintenance and cure (count three), failure to provide proper medical care (count four), and contractual damages for his permanent disability (count five).

In conjunction with his work on the *Queen Mary II*, which was Prcic's fourth contract aboard a Cunard ship, Prcic signed an employment agreement (Ex. 1, Empl. Agmt., ECF No. 6-1) in April 2018. That agreement incorporated the terms and conditions set forth in another document. (Ex. 2., Terms & Conds., ECF No. 6-1.) The only other signatory to the agreement was Fleet. (ECF No. 6-1, 2.) The terms and conditions include an arbitration clause that requires "every conceivable dispute between [Prcic] and [Fleet] or others, . . . including but not limited to *any other Carnival Corporation and plc group brand* on board the ships of which [Prcic] may work," "be resolved by binding arbitration" in Bermuda. (Terms & Conds. ¶ 15.2 (emphasis added).) By its terms, the arbitration is governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and the Bermuda Arbitration Act. (*Id.*)

### 2. Legal Standard

The Federal Arbitration Act creates a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Courts must compel arbitration if (1) the "plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles" and (2) the "claims before the court fall within the scope of that agreement." *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quoting 9 U.S.C. §§ 2–4). Any party resisting arbitration must establish that "the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000). And any "questions of arbitration must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer*, 500 U.S. at 26 (quoting *Moses*, 460 U.S. at 24).

### 3. Analysis

Prcic seeks to avoid arbitration, arguing that (1) his disputes with the Carnival Defendants are not subject to arbitration because neither of those Defendants signed the employment agreement to him and (2) the Defendants waited too long to hand over the arbitration agreement and therefore have waived their rights. The Defendants counter, first, that even though the Carnival Defendants are not signatories, any claims against them are unambiguously incorporated into the agreement and nothing prevents them, as nonsignatories,

from enforcing the arbitration provision. And second, say the Defendants, they filed their motion to compel arbitration immediately after removing the case to this court and therefore have not waived their rights. The Court agrees with the Defendants on both fronts.

### A. The Carnival Defendants can enforce the arbitration provision despite being nonsignatories to the employment agreement.

Arbitration is mandatory "unless (1) the four jurisdictional prerequisites are not met or (2) an affirmative defense under the New York Convention applies." *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1272 (11th Cir. 2011). Those jurisdictional conditions require (1) "an agreement in writing within the meaning of the Convention"; (2) that "the agreement provides for arbitration in the territory of a signatory of the Convention"; (3) that the agreement arises out of a commercial legal relationship; and (4) "a party to the agreement is not an American citizen." *Id.* The parties do not dispute that all four jurisdictional conditions have been met with respect to the arbitration agreement itself: there is an agreement in writing, signed by Prcic and Fleet; that agreement provides for arbitration in Bermuda, which is a signatory of the Convention; the agreement arises out of a commercial legal relationship; and at least one party is not an American citizen. There is also no dispute that the arbitration contemplates the claims at issue in Prcic's case. The only issue then, aside from waiver, is whether the Carnival Defendants can enforce the arbitration provision as nonsignatories.

As a starting point, Prcic is wrong when he says the Carnival Defendants' attempt to enforce the arbitration agreement fails outright under the terms of the Convention. (Pl.'s Resp. at 4–5.) Instead, those terms "address the recognition of arbitration agreements, not who is bound by a recognized agreement." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1648 (2020) ("*Outokumpu I*"). More to the point, the United States Supreme Court has explicitly held "that the New York Convention does not conflict with the enforcement of arbitration agreements by nonsignatories under domestic-law equitable estoppel doctrines." *Id.* Whether the Carnival Defendants can compel arbitration against Prcic, then, is a "threshold inquiry of arbitrability." *Outokumpu Stainless USA, LLC v. Coverteam SAS*, No. 17-10944, 2022 WL 2643936, at *5 (11th Cir. July 8, 2022) (Tjoflat, J., concurring) ("*Outokumpu II*").

Prcic maintains the Court must apply Bermudan law to this determination. (Pl.'s Resp. at 6–10.) In support, he points to a choice-of-law provision in the terms and conditions, that the "agreement shall be governed by the law of Bermuda." (Terms and Conds. ¶ 16.) Although Prcic is likely right that

Bermudan law would "govern the substantive issues in the case, as the choice of law provision in the contract between [Prcic and Fleet] dictates," here the Court is instead "dealing with the threshold inquiry of arbitrability." *Outokumpu II* at *5 (Tjoflat, J., concurring). Which law to apply in such a situation has recently come before the Eleventh Circuit as a matter of first impression upon remand from the United States Supreme Court in *Outokumpu II*. Although the Eleventh Circuit decided the issue before it on alternate grounds, Judge Tjoflat, in concurrence, surmised, after analysis, that "all signs point to the conclusion that we must apply federal common law in determining whether equitable estoppel applies in New York Convention cases." *Id.* at *6 (Tjoflat, J., concurring). Because the Court finds Judge Tjoflat's evaluation and reasoning persuasive, as well as predictive of the Eleventh Circuit's view on the issue, it declines to follow the district-court decisions Prcic relies on that conclude otherwise. Instead, the Court agrees that federal common law applies "to threshold questions of arbitrability, which include the application of equitable estoppel to [a nonsignatory's] attempt to compel arbitration." *Id.* (Tjoflat, J., concurring); *see also Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1168 (9th Cir. 2021) ("In cases involving the New York Convention, in determining the arbitrability of federal claims by or against non-signatories to an arbitration agreement, we apply federal substantive law . . . .") (cleaned up).

With that issue decided, the Court now turns to applying federal common law notions of equitable estoppel to the Carnival Defendants' attempt to compel arbitration here. "Starting with federal equitable estoppel principles, there are two circumstances in which a nonsignatory may compel arbitration": (1) "where the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims' against the nonsignatory"; or (2) "where the signatory raises allegations of collusive misconduct between the nonsignatory and other signatories to the contract." *Outokumpu II* at *7 (Tjoflat, J., concurring) (cleaned up). The Court finds both conditions satisfied.

First, the entirety of Prcic's complaint is based on his employment by the Defendants. (*E.g.*, Comp. ¶ 8 ("At all times material hereto, one or more of the Defendants was(were) Plaintiff's employer(s), as they controlled different aspects of Plaintiff's work aboard the vessel.") (transcribed as in original); ¶ 9 (describing the injuries he sustained as occurring "while Plaintiff was a crewmember in service of the vessel").) His claims rely on his alleged seaman's status and on the terms of the employment agreement containing the arbitration provision. *See, e.g., Sabo v. Carnival Corp.*, No. 12 -CV-22653-DLG, 2012 WL 11914396, at *4 (S.D. Fla. Nov. 29, 2012) (Graham, J.) ("to recover for maintenance and cure under federal maritime law and the Jones Act, Plaintiffs must be employed by

the Carnival Corporation); *Wai v. Rainbow Holdings*, 350 F. Supp. 2d 1019, 1029 (S.D. Fla. 2004) (Altonaga, J.) ("If a seaman is injured by a vessel's unseaworthiness, he may sue its owner or bareboat charterer."). The employment agreement defines the contours of Prcic's employment relationship with Fleet and each of the five counts in his complaint, all lodged against the "Defendants" collectively, in some way hinge on his grievances about his working conditions. (*E.g.*, Compl. ¶ 15 (referencing the Defendants' duty "to provide Plaintiff with a reasonably safe place to work," in count one); ¶ 23.i. (complaining that Defendants' failure to provide a "safe place to work" resulted in his injuries, in count two); ¶ 25 (noting that his injuries arose "while in the service of the vessel as a crewmember," in count three); ¶ 31 (noting that during the relevant period, "Plaintiff was employed by one or more of the Defendants as a seafarer and was a member of the vessel's crew," and that the "Defendant(s) sen[t] Plaintiff back to work while he was still injured," in count four); ¶¶ 36–38 (alleging claims against "the Defendants," collectively, under the employment agreement, in count five).) Even though the employment contract is not explicitly mentioned in each count, Prcic's claims would not exist but for his employment which, again, is defined in the agreement.

      The second set of circumstances, under which a nonsignatory can enforce an arbitration provision, is satisfied as well. All of Prcic's allegations explicitly describe the misconduct of the Defendants as interdependent and intertwined. Prcic concedes as much in his response, explaining that his claims are "asserted . . . against Defendants for their collective failures." (Pl.'s Resp. at 2.) Not a single one of Prcic's counts distinguishes between the Defendants, lumping their misconduct into one interwoven and inherently inseparable endeavor.

      In sum, as set forth above, Prcic fails to convince that the Carnival Defendants cannot enforce the arbitration provision. This is especially so when "Carnival Corporation and plc group" are explicitly and unambiguously incorporated into the provision obligating Prcic to submit "every conceivable dispute" arising "on board the ships of which [he] may work" to arbitration. (Terms & Conds. ¶ 15.2.)

### B. The Defendants have not waived their rights to arbitration.

      Prcic's other basis for seeking to avoid the arbitration provision is his claim that the Defendants have waived their right to arbitration by waiting over a year and seven months to even provide Prcic with a copy of the agreement containing the arbitration clause. (Pl.'s Resp. at 11.) The Defendants counter they have not waived arbitration, pointing out that they immediately moved to compel arbitration upon removing this case to federal court. (Defs.' Reply at 8.) Notably, nearly all of the delay Prcic complains of took place before Prcic ever

even served the Defendants with his complaint. Finding no authority suggesting that a defendant can waive its rights to arbitration based on pre-litigation conduct, the Court agrees with the Defendants.

"Like any other contractual right, the right to arbitrate can be waived." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1235–36 (11th Cir. 2018) (cleaned up). On the other hand, "because federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof." *Id.* The Eleventh Circuit sets forth a two-part inquiry to determine whether there has been waiver: (1) "whether under the totality of the circumstances, the party has acted inconsistently with the arbitration right"; and, if so, (2) "whether the party's conduct has in some way prejudiced the other party." *Id.* (cleaned up). A "key factor" in making the first determination is "whether a party has substantially invoked the litigation machinery prior to demanding arbitration." *Id.* (cleaned up). Indeed, "the purpose of the waiver doctrine is to prevent litigants from abusing the judicial process." *Id.*

In seeking to establish waiver, Prcic recounts repeatedly asking the Defendants, beginning in July 2020, whether they believed Prcic's claims were subject to arbitration. (Pl.'s Resp. at 11.) Prcic also describes telling the Carnival Defendants, multiple times, that, if they "fail[ed] to provide the requested information, Plaintiff [would] consider the Defendants to have waived any alleged arbitration agreement." (*Id.* at 12.) Thereafter, Prcic filed his complaint in state court, in October 2021. (*Id.*) The Defendants then timely removed the case, to this Court, in March 2022, and then, a week later, moved to compel arbitration. (*Id.*) As Prcic points out, from the time he first inquired about arbitration until the Defendants moved compel, over a year and seven months had elapsed. Although the Court finds the Defendants' refusal to engage in discussions about arbitration puzzling, even in the face of the difficulties they claim were posed by the pandemic, it nonetheless declines to find that such pre-litigation conduct amounts to waiver. Prcic does not identify any instance of the Defendants' "invok[ing] the litigation machinery prior to demanding arbitration," never mind "substantially" doing so. Accordingly, the Court does not find the Defendants have acted inconsistently with their right to arbitrate and, therefore, finds Prcic has not carried his heavy burden of proving waiver. Because Prcic fails to clear the first hurdle of establishing waiver, the Court declines to address the prejudice prong.

### 4. Conclusion

For the reasons set forth above, the Court **grants** the Defendants' motion to compel arbitration (**ECF No. 6**). It appears all Prcic's claims are subject to arbitration and neither party has asked the Court to stay these proceedings,

pending arbitration. Accordingly, the Court **dismisses** this case, albeit **without prejudice**. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Intern. Union AFLCIO-CLC v. Wise Alloys, LLC*, 807 F.3d 1258, 1268 (11th Cir. 2015) (pointing out that a stay, as opposed to dismissal, pending arbitration is mandatory only where one of the parties applies for such a stay).

The Clerk is thus directed to **close** this case and any other pending motions are **denied as moot**.

**Done and ordered** in Miami, Florida, on November 14, 2022.

_____
Robert N. Scola, Jr.
United States District Judge